UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ROGER WICKSELL** | **CIVIL ACTION NO. 3:12-cv-0389** |
|     **LA. DOC #317782** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **RICHARD DeVILLE,** | |
| **ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Roger Wicksell, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on February 3, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) who is incarcerated at the South Louisiana Corrections Center, Basile, Louisiana. He complains that prison authorities at Caldwell Corrections Center (CCC) Grayson, Louisiana interfered with his right of access to the courts by tampering with his "legal mail." He sued Warden Richard DeVille, Deputy Warden Dana Beckley, Captain Robert McKeithan and mailroom Sergeant Richmond praying for compensatory damages of $49.99 and punitive damages of $250,000. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

On May 29, 2011, plaintiff's brother ordered a "paralegal correspondence course handbook,

priced $49.99 and entitled 'Prisoner Guerrilla Handbook.[1]'" According to plaintiff, the book was shipped to plaintiff at CCC on May 31, 2011, and delivered to the CCC mail room on June 10, 2011.[2] [Doc. 1, ¶9] According to plaintiff, defendant Richmond "failed to open this special/legal mail in the presence of the plaintiff as per the written LCS policy... nor did she issue plaintiff the

---

[1] The "Prisoners Guerilla Handbook to Correspondence Programs in the United States and Canada, 3rd Edition", ISBN - 13: 978-0981938509, by Jon March Taylor and Susan Schwartzkopf. The book is sold for $49.95 by the Prison Legal news, Brattleboro, Vermont. That organization's web site describes the book as follows:

"Prisoners' Guerrilla Handbook to Correspondence Programs in the U.S. and Canada, 3rd Edition (PGHCP) is written by Missouri prisoner Jon Marc Taylor who has successfully completed a B.S. degree, an M.A. degree and a Doctorate by mail while imprisoned. This book was initially published in the late 1990s. The second edition was published by Biddle Publishing in 2002. The publisher retired in 2007 and Prison Legal News took over the publishing of the book as the first title in its new book line.

With the expert assistance of Editor Susan Schwartzkopf, the third edition of PGHCP has been totally revamped and updated. Many colleges no longer offer correspondence courses, having gone totally to online distance learning courses. This book offers a complete description of more than 160 programs that are ideal for prisoners seeking to earn high school diplomas, associate, baccalaureate and graduate degrees and vocational and paralegal certificates. In addition to giving contact information for each school, Taylor includes tuition rates, text book costs, courses offered, transfer credits, time limits for completing course, whether the school is accredited, and if so by whom, and much, much more. What makes the book unique is Taylor's first hand personal experience as an imprisoned distance learning student who has a basis for comparison and knows how to judge a college correspondence course from the perspective of an imprisoned student who doesn't have e mail access and who cannot readily call his instructor." See https://www.prisonlegalnews.org/111_ProductDetails.aspx

[2] In support of this allegation, plaintiff provided a United States Postal Service (USPS) Track & Confirm receipt demonstrating that a parcel bearing label number 9102969010383065472607 was mailed from Brattleboro, Vermont on June 3, 2011 and delivered to an address in Grayson, Louisiana on June 10, 2011 at 8:30 a.m. [Doc. 1-4, Exhibit A-2] On August 8, 2011, Wayne Stowe, the Post Master at the United States Post Office in Grayson advised plaintiff that the post office records indicated delivery of the parcel in question. [Doc. 1-4, Exhibit A-1]

required Offender/Correspondence Rejection Form." [Doc. 1, ¶10] Instead, Richmond denied receiving the package. [Doc. 1, ¶11][3] Defendant Beckley denied any knowledge of the package but agreed to investigate. [Doc. 1, ¶12][4] However, plaintiff claims that the investigation did not take place. [Doc. 1, ¶13] (According to plaintiff, Beckley later advised him, "Warden DeVille said he was not going to allow a book that could be used to learn how to file a lawsuit into this facility." [Doc. 1, ¶ 14] Thereafter, Warden DeVille "refused to answer [plaintiff's] request." [Doc. 1, ¶15][5])

Plaintiff believes that while inmates seeking civil redress are allowed access to forms, they are not permitted to use law books, typewriters, computers or other available resources. [Doc. 1, ¶16]

---

[3] On July 17, 2011, plaintiff submitted an Offender Request to the prison mail room in which he claimed, "I am writing in regard to a book I have not received. The book was tracked; it arrived on 6/11/11. The name of the book was The Gorilla [sic] Book of Corresponding Courses to take college courses through the mail. I can't see why I can't have it. All I am looking to do is better myself and if I can't have it I'd like to mail it home. It is a 50 dollar book. I would like to know why I wasn't notified...." On July 18, 2011 Sgt. Richmond replied, "We haven't received a book for you with this name 'Gorilla,' you need to see who signed for this book because we haven't received it or you would have to sign for it in the parcel log. I will watch for it." [Doc. 1-4, Exhibit C]

[4] On July 20, 2011 plaintiff submitted an Offender Request to Deputy Warden Beckley in which he stated, "I'm writing in regards to a book that's been held from me for over 40 days without notice. The book cost $49.99 w/o shipping. I don't see why I can't have it. I'm just trying to better myself. I'd like to know if I'll be able to get my book and I'd like to talk to your face to face about the matter..." On July 25, Beckley replied, "What is the name of the book? There is no hold on a book for you." [Doc. 1-4, Exhibit D] On the same date plaintiff wrote another Offender Request to Beckley stating in part, "I'm writing in regards to a book that [has] been held from me for over 45 days now. I talked to the Captain Friday. He told me that you had it in. He talked to Warden DeVille and he approved the book. The name of the book is Prisoner Guerilla Handbook to Correspondence Courses in USA and Canada by Jon Marc Taylor and Susan Schwartzkopf. It arrived here at 6-10-11 8:30 a.m. You can go to USPS.com and check for yourself." Plaintiff supplied the USPS confirmation number and concluded his request, "I would like to know why I wasn't notified when the book arrived." On July 28, Beckley replied, "We are investigating this." [Doc. 1-4, Exhibit E]

[5] On July 26, 2011 plaintiff submitted an Offender Request to Warden DeVille. [Doc. 1-4, Exhibit F]

3

According to plaintiff, the book – <u>Prisoner Guerilla Handbook</u> – was intended for use as an alternative means of seeking access to the Courts. [Doc. 1, ¶17]

On August 5, 2011, plaintiff received a "special /legal mail parcel" which had been opened out of his presence. According to plaintiff, "The parcel was missing an '<u>Inmate Litigation Manual; Protecting Your Health and Safety</u>.'"[6] [Doc. 1, ¶18] Plaintiff complained and was advised by defendant McKeithan, "There was no book taken out of your mail ... it was not opened by staff."

---

[6] Protecting Your Health and Safety: A Litigation Guide for Inmates, 2nd Edition, 2009, by Robert E. Toone, published by the Southern Poverty Law Center is also available from the Prison Legal News. The organization's web site describes the book as follows: "Protecting Your Health & Safety is an easy to read, plain language guide prisoners can use to identify and litigate federal civil rights claims against prison officials.

Written by Robert E. Toone and edited by PLN columnist Daniel Manville, Protecting Your Health & Safety dedicates over 100 pages to the different kinds of constitutional and statutory violations prisoners frequently encounter while incarcerated. Topics discussed include the First to Fourteenth Amendments, the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Persons Act, the Americans with Disabilities Act, and the Rehabilitation Act.

Each issue, whether it may be First Amendment retaliation or a violation of the Equal Protection Clause, is addressed in laymen's terms and supported by case citations from federal district courts, federal courts of appeal, and the United States Supreme Court. Difficult concepts like deliberate indifference are simplified in just seven pages, giving you what you need to know to make out a cognizable Eighth Amendment claim.

Protecting Your Health & Safety does not stop at helping identify potential wrongs, though. Rather, with its over 130 page discussion on how to write a complaint, seek in forma pauperis status, ask for appointment of counsel, respond to motions to dismiss, respond to motions for summary judgment, conduct discovery, and even present your case at trial, Protecting Your Health brings you to the finish line. Even procedural issues such as exhaustion of administrative remedies are addressed, helping you avoid dismissal at the pleading stage. A glossary of commonly used legal terms is also included, along with a directory of addresses where to file your federal civil rights suit in each judicial district."

See https://www.prisonlegalnews.org/112_ProductDetails.aspx

[Doc. 1, ¶19][7] Approximately one week later, plaintiff confronted McKeithan with correspondence from Attorney Lance Weber, along with a copy of the sales receipt/delivery confirmation and McKeithan changed his story and returned the book to plaintiff. [Doc. 1, ¶20][8] Plaintiff subsequently received this publication;[9] however, he believes that the other publication – Prisoner Guerilla Handbook – was seized on June 10, 2011, and subsequently destroyed. [Doc. 1, ¶21]

According to plaintiff, he ordered these publications "... in order to learn how to properly challenge the conditions of confinement at LCS-Caldwell Detention Center..." because the prison's policy concerning access to legal materials and the law library, left him "with no meaningful method to learn the necessary procedures" and thus "effectively denied [him] access to the courts." [Doc. 1, ¶23] Plaintiff implies that as a result of the interference with his mail, he was unable to litigate

---

[7] Plaintiff submitted an Offender Request to Captain McKeithan on August 8, 2011. Therein he complained, "I'm writing in regards to a book that was taken out of my special mail. It was also stamped First Class. The book was sent by my attorney." Plaintiff complained that the opening of "legal mail" outside his presence violated prison regulations. Plaintiff then identified the book by title – Protecting Your Health and Safety – and provided a USPS tracking number. On August 9, McKeithan replied, "There was no book taken out of your mail. It arrived just as it was delivered to you. It was not opened by staff. If something is missing it is the fault of whoever sent the package." [Doc. 1-4, Exhibit G]

[8] See Doc. 1-4, Exhibits H-1 and 2, Sales receipt from Prison Legal News showing shipment of the book in question on August 1, 2011 and, letter from Lance T. Weber, General Counsel of the Human Rights Defense Center. The letter in no way implies that Weber had an attorney-client relationship with plaintiff.

[9] Plaintiff submitted an official offender grievance on August 1, 2011 with regard to the still missing copy of The Prisoner Guerilla Handbook [Doc. 1-4, Exhibit I]. On August 16, 2011 he submitted an official grievance concerning the Litigation Manual. However, in that grievance he acknowledged that he "... received the book as regular mail" and complained that it was sent as "legal mail" and therefore the parcel containing the second book should have been treated as legal mail pursuant to prison regulations. [Doc. 1-4, Exhibit J]

5

various unconstitutional conditions of confinement a the LCS-Caldwell Detention Center.[10]

Plaintiff claimed that he was transferred to his present place of confinement on September 1, 2011, in retaliation for filing grievances complaining about the delivery of his books.[11]  He claimed that the opening of his mail, the seizure of his books, the failure to answer his grievances, and the transfer of plaintiff to his present place of confinement violated plaintiff's due process rights as guaranteed by the Fourteenth Amendment. [Doc. 1, ¶¶33-34]

### *Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or

---

[10] Plaintiff listed these conditions as follows:

(1) "Medical care staff is inadequate with a nurse only from 6 a.m. until 6 p.m., Monday through Friday, and a Doctor just twice a month. There is no mental health and all substance abuse programs are inmate run. Dental facilities are unsanitary and staph infection is rampant. The nurse consistently fails to review medical records and she changed the dosage on plaintiff's prescription without consulting the doctor.

(2) "The only program at LCS-Caldwell Detention Center which is accredited by the Dept. Of Corrections is a single GED class. There is no type of vocational training nor is there any hobbycraft. Recidivism is at an all time high with no aid in sight.

(3) "Food portions would be considered undersized for children. The only other provision is to purchase food from commissary at inflated prices. There are no accommodations for special or religious diets. The food is served cold, in the restroom area of the dorm. The only dining facilities seat only 30 although the dorm sleeps over 70.

(4) "The dorm is infested with vermin. The floor is cracked and broken creating a trip hazard. Footlockers are in disrepair and can be disassembled to make weapons. There is only about 45 sq. ft. of space per person. Fire inspections are inadequate. There are cracks, rust, and mold on the walls. Lights are on 24 hours." [Doc. 1, ¶¶ 24-27]

[11] See Doc. 1-4, Exhibit K, Administrative Remedies Grievance dated September 19, 2011.

employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C. §1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* \_\_\_ U.S. \_\_\_, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual

7

allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has submitted an articulate statement of the facts upon which his claims for relief are predicated. He has supplied documentary evidence in support of his claims. Further amendment would serve no useful purpose.

*2. Interference with "Legal Mail" and Access to Courts*

Plaintiff claims that the defendants have interfered with his legal mail – first by either confiscating or losing the Prisoner Guerilla Handbook, and second, by delaying the delivery of the prisoner Litigation Manual. Neither incident establishes interference with privileged correspondence from plaintiff's attorney. The Prisoner Guerilla Handbook as previously noted, was unrelated to any past, pending, or proposed litigation. Indeed, the book offers listings for correspondence courses available to prisoners. Further, plaintiff ultimately received the Litigation Manual. Even if the package containing that book and the letter written Mr. Weber were opened and read, plaintiff still does not establish a constitutional violation. Clearly, Weber was not at any time pertinent to this litigation involved in an attorney-client relationship with the plaintiff. Nor did his letter offer legal advice or counsel. Finally, taken as true for the purposes of this litigation, plaintiff has not established that the defendants did anything more than open and inspect these parcels/envelopes for contraband, an activity which they are allowed by law to perform. See *Brewer v. Wilkinson*, 3 F.3d 816, 820-821 (5th Cir. 1993).

Further, to the extent that plaintiff maintains that the defendants' acts interfered with his right of access to the courts, he has also failed to state a claim. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325

(5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not demonstrated that he was unable to either transmit or receive documents from this court or any other.

Further, in order to establish a Constitutional violation, plaintiff must assert and prove an actual injury stemming from defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To prevail on such a claim, a prisoner must show that his legal position has been prejudiced. See *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). He must allege and ultimately demonstrate that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff implies that but for the loss of The Prisoner Guerilla Handbook, he would have proceeded with litigation attacking – the level of medical staffing and medical care available at the prison; the lack of rehabilitation or education programs available; the inadequacies of the prison's dietary department; and general conditions of confinement. [See Doc. 1, ¶¶ 24-27] However, it is clear that his inability

9

to consult The Guerilla Handbook, a listing of correspondence courses available to prisoners, in no way inhibited his ability to litigate conditions of confinement claims. In short, plaintiff has not shown that his legal position was prejudiced by the defendants' alleged interference with his legal mail and therefore, plaintiff's access to court claim is frivolous.

### 3. Parratt/Hudson Doctrine

Plaintiff claims that the defendants either intentionally confiscated or negligently destroyed a book worth almost $50 and, among other things, he seeks compensatory damages for that loss. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913. The Due Process Clause does not embrace tort law concepts. *Id.* Although a

prisoner may be afforded a remedy <u>under state tort law for deprivation of property</u>, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667. Even in instances where intentional deprivation occurs, as is implied by the plaintiff, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that, at worst, an intentional, random, and unauthorized deprivation occurred when the defendants failed to deliver <u>The Guerilla Handbook</u> to the plaintiff. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation;

plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983 and his claim to the contrary is frivolous.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 9, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE